**Craig B. WEAVER, Appellant,**

v.

**Terry TUCKER, Appellee.**

**No. 3–583A138.**

Court of Appeals of Indiana, Third District.

April 19, 1984.

---

Kenneth R. Martin, Goshen, for appellant.

Edward N. Kalamaros, Thomas F. Cohen, Kalamaros & Associates, P.C., South Bend, for appellee.

HOFFMAN, Judge.

Craig Weaver was driving a motorcycle on County Road 36 in Wakarusa, Indiana at approximately 9:45 P.M. on April 21, 1980. Weaver collided with Terry Tucker's dog, which had broken its chain and escaped its enclosure. Weaver filed a complaint for damages alleging that Tucker was negligent in failing to confine the animal. The trial court granted Tucker's renewed motion for summary judgment and found that there was no evidence that Tucker had actual knowledge of the propensity of his dog to stray upon the highway. It is from this judgment that Weaver appeals.

Since Weaver is appealing a summary judgment, we should begin by setting forth the appropriate standard of review. In reviewing a grant of summary judgment, the Court of Appeals must use the same standards applicable to the trial court and reverse the decision only if the record discloses an unresolved issue of material fact or an incorrect application of the laws to those facts. *Jones v. City of Logansport*, (1982) Ind.App., 436 N.E.2d 1138.

The trial court based its decision on this Court's opinion in *Royer v. Pryor*, (1981) Ind.App., 427 N.E.2d 1112, which required actual knowledge of a dog's propensity to commit an act which would endanger persons or property in order to hold a landlord liable for negligence in permitting his tenants to keep a dog which attacked a child. Weaver argues that it was error for the trial court to base its decision on *Royer* since this case involves the owner of a dog rather than a landlord whose tenants own the dog and that the dangerous propensity discussed in *Royer* referred to viciousness rather than the propensity to stray upon a highway.

Weaver contends that the proper standard, and the one which the trial court should have used, was established by the Supreme Court of Indiana in *Blake v. Dunn Farms, Inc.*, (1980) Ind., 413 N.E.2d 560, wherein it was held that the keeper of an animal has the duty and responsibility

to provide for the restraining and confinement of that animal.

Weaver further supports his argument by citing the statutory authority which places such a duty upon the owner of an animal. IND.CODE § 15–2.1–21–8 provides:

"Running at large

Sec. 8. Running at Large. A person responsible for a domestic animal who recklessly permits the animal to run at large commits a Class B misdemeanor."

An interpretation of the forerunner of the above statute is found in *Thompson v. Lee*, (1980) Ind.App., 402 N.E.2d 1309. *Thompson* involved a collision between a motorcyclist and a cow. The Court held that the word "permit" meant actual or constructive knowledge that the animal is no longer confined within an enclosure. This is in concert with the holding in the later *Royer, supra*, case.

Weaver contends that use of the term "recklessly" rather than "knowingly" refutes such a requirement for actual knowledge. A person engages in conduct "recklessly" if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct. IND.CODE § 35–41–2–2.

Tucker's conduct in this instance does not even support a finding that he acted recklessly. He was not charged under the criminal statute Weaver bases his argument on. Furthermore, with regard to the running at large statute, the Court in *Thompson, supra*, also held that negligence per se, or statutory negligence, could not be found absent a showing of actual or constructive knowledge on the part of the owner. Which leads one back to the original point.

Following a lengthy discussion, the *Thompson* Court did set forth a standard which is applicable to the negligence case now before us. It held:

"What we are left with, then, is a negligence standard of reasonable care for containing and/or controlling cattle to prevent the obvious danger of escaped cattle to the motoring public." (Footnote omitted.)

402 N.E.2d at 1313.

■ Weaver's argument regarding the use of the term "dangerous propensity" to mean viciousness is quickly defeated. "Dangerous propensity" was defined in *Royer, supra*, as " 'a propensity or tendency of an animal to do any act which might endanger the safety of person or property in a given situation. It is the act of the animal and not in the state of mind of the animal from which the effects of a dangerous propensity must be determined.' " (Citations omitted.) 427 N.E.2d at 1117. Like cattle, even docile dogs can become a menace to the traveling public when in the road at night. *See, Blake, supra.*

We must agree that the requirement of actual knowledge in *Royer, supra*, was applied in the context of a landowner rather than an animal owner. However, this does not mean that *Royer, supra*, and *Blake, supra*, are in conflict with one another. Rather, we believe that all of the recent animal cases may be read in concert and that the same standards apply throughout them all.

■ Clearly, Indiana case law places a duty on the owners of domestic animals to keep them confined. However, despite even the best of efforts, animals are prone to escape confinement. We have previously established that such escape is not negligence per se on the part of the owner. However, if the owner knew the animal was likely to escape or knew that the animal had escaped, yet did nothing about it, that is a different matter altogether.

■ In the case of *Leek et al. v. Lumpkin*, (1967) 141 Ind.App. 153, 226 N.E.2d 913, which involved a negligence action arising from a collision between a bull and semi-trailer, this Court ascertained the burden placed upon the plaintiff.

"The Plaintiff below was required to sustain the allegations of his complaint by substantial evidence of probative value

and establish one of two propositions in order to create a duty from the Defendant to the Plaintiff:

1. The Plaintiff would be required to establish that the Defendant was negligent in his choice of the field in which he placed the animal and could reasonably foresee that the animal would escape therefrom; or,

2. He must have had knowledge that the animal was on the public highway and in violation of the statute, permitted the animal to remain at large."

141 Ind.App. 156, 226 N.E.2d at 914. All indications are that the duty placed upon animal owners necessarily includes the element of knowledge on the part of the owners. Therefore, the trial court in the case now before us applied the correct standard in reaching its decision.

 The evidence discloses that Tucker's dog was chained by a steel chain to a dog house. It was chained in a large yard which was surrounded by a wood and chain fence five or six feet high. Tucker stated in answer to an interrogatory that the dog had escaped from the enclosure before, but had never broken the chain before.[1] After the earlier escapes, the dog was chained to the dog house to prevent any future ones. However on this occasion, it broke the chain for the first time and dug its way out. Tucker stated in an affidavit that prior to the accident, his dog had never strayed onto County Road 36 and that at the time of the accident he had no knowledge that the dog had escaped.

Weaver submitted no evidence to the contrary. The trial court was correct in finding that the record disclosed no unresolved issue of material fact. Therefore, the summary judgment in favor of Tucker is affirmed.

Affirmed.

STATON, P.J., and GARRARD, J., concur.

---

1. In his briefs, Weaver refers to a deposition wherein he claims Tucker admitted the dog had escaped three to five times prior to the accident. The record contains no deposition of Tucker. Normally, this Court could obtain such a missing document through a writ of certiorari.

However, the record also fails to disclose that any depositions were ever published. Without publication, depositions may not be considered. *Augustine et al. v. First Fed. Sav. & Loan Assn.,* (1979) 270 Ind. 238, 384 N.E.2d 1018.